# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| JUAN DEREK KINARD, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 4:18-cv-01124-SGC |
| SOCIAL SECURITY ADMINISTRATION, Commissioner, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff, Juan Derek Kinard, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability, disability insurance benefits, and supplemental security income. (Doc. 1). Plaintiff timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review. For the reasons stated below, the Commissioner's decision is due to be affirmed.

## I.    FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Plaintiff was thirty-eight years old at the time of the unfavorable decision issued by the Administrative Law Judge ("ALJ"). (*See* R. 27, 37). Plaintiff speaks English and has less than a high school education; he was placed in special

---

[1] The parties have contented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 8).

education classes until he dropped out of school in the eleventh grade. (R. 36). Plaintiff has prior work experience as a packer and construction laborer. (R. 46). Plaintiff filed the instant application on May 5, 2015, alleging a disability onset of August 1, 2013, due to back pain, knee pain, and mental conditions. (R. 34, 185). Plaintiff's date last insured was March 31, 2014. (R. 21, 34).

Plaintiff's application followed his March 18, 2015 release from the psychiatric unit of Mountain View Hospital. (R. 361). Plaintiff was admitted there on March 3, 2015, exhibiting anger and anxiety and reporting visual and auditory hallucinations. (*Id.*). Plaintiff was diagnosed with depressive disorder and adjustment disorder with disturbance of emotions and conduct. (R. 363). Plaintiff was not taking medications at the time of his admission, but medications administered during his hospitalization stabilized his mood and improved his condition. (R. 361-63). At discharge, Plaintiff was stable, cognitively intact, and had a good prognosis. (R. 363).

Plaintiff's 2015 hospitalization was preceded by a 2014 hospitalization in the psychiatric unit of Gadsden Regional Medical Center, where he was admitted for worsening agitated behavior. (R. 333). Plaintiff reported mild to moderate paranoia, anxiety, and mood swings. (R. 335). Plaintiff was diagnosed with intermittent explosive disorder, mood disorder, and personality disorder. (R. 336).

Plaintiff was discharged in stable condition after six days, when it was determined he had received maximum benefit from hospitalization. (R. 333).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall

within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Plaintiff had not engaged in SGA since his application date. (R. 21). At step two, the ALJ found Plaintiff suffered from the following severe impairments: (1) schizophrenia; (2) personality disorder; (3) depression; and (4) substance abuse. (*Id.*).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (R. 21-22). Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform the full range of work at all exertional levels but could not be exposed to hazardous machinery. (R. 23). Additionally, the ALJ

4

found Plaintiff's RFC was subject to the following non-exertional limitations: (1) he could remember short, simple instructions, but not detailed or complex instructions; (2) he could perform simple, routine, repetitive tasks, but not detailed or complex tasks; (3) he could have no more than occasional contact with the general public and co-workers; (4) he could adapt to occasional changes in the work place, so long as they were well-explained and introduced gradually; (5) he could "perform jobs primarily dealing with things, not people"; and (6) he could not read instructions, write reports, or perform math calculations. (*Id.*).

At step four, the ALJ determined Plaintiff could perform his past relevant work as a construction laborer. (R. 27). Accordingly, the ALJ concluded the Plaintiff was not disabled. (*Id.*).

## II. STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are

supported by substantial evidence but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

On appeal, Plaintiff contends the ALJ erred in: (1) discounting the opinion of an examining psychologist; (2) finding Plaintiff could perform his past work; (3) finding Plaintiff did not meet one of several listed impairments; and (4) relying on insufficient Vocational Expert ("VE") testimony. (Doc. 11). Each argument is addressed in turn, although not in the order presented.

### A. <u>Opinion of Examining Psychologist</u>

Dr. David Wilson performed a psychological evaluation and completed a Mental Health Source Statement and Mental Health Questionnaire on July 17, 2017. (R. 465-70). Dr. Wilson opined Plaintiff gave "good effort" during cognition and memory testing but demonstrated: (1) "serious problems with working memory"; (2) extreme deficiencies in acquired information and abstract reasoning; and (3) the ability to read and perform math problems at a first-grade level. (R. 467-68). Dr. Wilson concluded Plaintiff suffered from "serious cognitive deficits and functions in the Intellectually Disabled Range." (R. 468). Dr. Wilson further expressed that Plaintiff's "deficits would cause major problems in any work setting, and he would have difficulty understanding anything beyond the simplest of instructions." (*Id.*). Dr. Wilson also opined Plaintiff had a "serious mood disorder," which "would cause major problems in a work environment" and impair his "ability to withstand" workplace pressures. (*Id.*). Dr. Wilson's

diagnoses were "Bipolar Disorder Mixed with Psychotic Features" and "Intellectual Disability." (*Id.*). Dr. Wilson's questionnaire also indicated Plaintiff suffered from a variety of severe symptoms which would almost certainly preclude employment, including: (1) he would be off-task for 80% of the workday; and (2) would fail to report to work on twenty-five days out of thirty. (R. 469-70).

The ALJ afforded little weight to Dr. Wilson's opinions. (R. 26). Specifically, the ALJ found Dr. Wilson's opinions were inconsistent with Plaintiff's overall treatment history and activities of daily living. (*Id.*). On appeal, Plaintiff contends the ALJ's conclusion regarding Dr. Wilson's opinions runs afoul of the Eleventh Circuit's holding that the ALJ must "state with at least some measure of clarity the grounds of his decision." (Doc. 11 at 23) (quoting *McClurkin v. SSA*, 625 F. App'x 960, 962 (11th Cir. 2015)).

As an initial matter, because Dr. Wilson was not Plaintiff's treating physician, his opinions are not due any particular deference; instead, the ALJ could reject Dr. Wilson's opinions "if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987); *see Crawford,* 363 F.3d at 1160; 20 C.F.R. §§ 404.1502, 404.1527. Additionally, contrary to Plaintiff's contention, the ALJ did describe his reasons for affording Dr. Wilson's opinions little weight: inconsistency with Plaintiff's activities of daily living and his treatment history at Cherokee Etowah Dekalb Mental Health Center ("CED").

Moreover, and as explained below, the ALJ's conclusions in this regard are supported by substantial evidence.

Prior to discussing Dr. Wilson's opinions, the ALJ accurately summarized his treatment at CED as follows:

> Throughout 2015, 2016, and 2017, the claimant received mental health treatment from [CED]. According to treatment notes, the claimant was initially provided with intensive day treatment in 2015. Subsequent treatment in 2016 and 2017 consisted of medication management and individual therapy. According to treatment notes, the claimant reported doing well and maintaining on his prescribed regimen.
>
> . . . .
>
> His treatment at CED [] further shows that the claimant's mental health status has largely been maintained with ongoing conservative treatment with psychotropic medications and individual therapy. For example, when examined on October 21, 2016, the claimant reported doing well and was without complaints. He reported that his depression was controlled and that his medications were helpful as he tolerated them with no side effects. He also reported that his appetite was stable. The claimant continued to tolerate his treatment regimen with no complaints or exacerbation of his psychotropic symptoms when seen on December 8, 2016, January 10, 2017, February 7, 2017, and March 7, 2017. While the claimant reported auditory and visual hallucinations when seen on April 6, 2017, he denied any exacerbated symptoms when seen on May 9, 2017, and June 6, 2017. Such records suggest that the claimant's symptoms are adequately maintained with his prescribed regimen. Notably, treatment notes during such time do not mention significant limitations with concentration or focus. These records are also inconsistent with the limitations he alleged at the hearing.

(R. 24-26).

Review of the record reveals the ALJ's summary of Plaintiff's treatment at CED was accurate. When Plaintiff began treatment at CED in December 2014, it was reported that he had recently been arrested for domestic violence, wasn't eating or sleeping, and was refusing to bathe. (R. 382-89). However, subsequent records note continual improvement in his judgment and insight, compliance with medication treatment, and satisfactory progress. (*E.g.* R. 369, 371, 373, 375, 377). Additionally, the records support the ALJs conclusions regarding Plaintiff's progress on the specific dates mentioned from December 2016 through June 2017. (R. 434-441). Notably, this period of sustained improvement immediately preceded Dr. Wilson's July 2017 opinions. Accordingly, the ALJ's decision to afford little weight to Dr. Wilson's opinions is supported by substantial evidence.

For the foregoing reasons, the ALJ did not err in his treatment of Dr. Wilson's opinions.

### B. Past Work and VE Testimony

Next, Plaintiff contends the ALJ erred in finding he could perform past relevant work. (Doc. 11 at 26-29). To this end, Plaintiff argues the ALJ failed to develop the record regarding the specific mental and physical demands of his past relevant work. (*Id.*). As Plaintiff would have it, this failure constitutes both an evidentiary and legal error. (*Id.*).

During the hearing, Plaintiff testified about his past work, including road maintenance. (R. 40). Specifically, Plaintiff testified he worked on a "spot truck" where he would work from the back of the truck, unloading gravel with a shovel where needed. (*Id.*). The VE was present for Plaintiff's testimony, and the VE classified Plaintiff's construction work as "construction laborer," bearing number 869.687-026 under the Dictionary of Occupational Titles ("DOT"). (R. 46). After the ALJ posed a hypothetical explaining all of the limitations imposed by Plaintiff's RFC, the VE testified such an individual could perform all of Plaintiff's past work, as well as other jobs existing in significant numbers in the national economy. (R. 46-47). The VE further averred his testimony was consistent with the DOT. (R. 48).

The hearing testimony constitutes substantial evidence to support the ALJ's conclusion that Plaintiff was capable of performing his past relevant work "as actually performed." (R. 27); *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 950-53 (11th Cir. 2010) (similar VE testimony constituted substantial evidence). Additionally, the ALJ's decision in this regard complies with applicable law. *See id.*; 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).[2]

---

[2] In a related issue, it appears Plaintiff contends the ALJ erred by failing to incorporate a limitation into the hypothetical he posed to the VE. (Doc. 11 at 45-47). Specifically, Plaintiff suggests the ALJ should have asked whether Plaintiff would be able to work if he was off-task for more than 20% of an eight-hour workday. (*Id.* at 46). Plaintiff's counsel posed this additional limitation during the ALJ hearing, and the VE testified that such an individual would be unable to work. (R. 48). Accordingly, Plaintiff contends the ALJ's decision was not

## C. The Listings

Next, Plaintiff contends he meets the criteria of four listed impairments: (1) listing 12.03, Schizophrenia spectrum and other psychotic disorders; (2) listing 12.04, Depressive, bipolar, and related disorders; (3) listing 12.06, Anxiety and obsessive-compulsive disorders; and (4) listing 12.08, Personality and impulse-control disorders. (Doc. 11 at 29-34). Plaintiff's argument in this regard is limited to quoting: (1) the text of the four listed impairments; (2) portions of the ALJ's decision addressing the listings; and (3) thirteen pages worth of treatment notes and opinions from medical sources, as well Plaintiff's hearing testimony. (*Id*. at 29-45). Even if this briefing were sufficient to satisfy Plaintiff's burden to show he met a listing, the ALJ's decision in this regard is supported by substantial evidence. Additionally, to the extent Plaintiff relies on Dr. Wilson's opinions to establish the criteria of a listed impairment, the ALJ properly discounted Dr. Wilson's opinions, as discussed above.

The ALJ determined Plaintiff did not meet the criteria of listings 12.03, 12.04, or 12.08. (R. 22-23). Each of these listed impairments shares the same "paragraph B" criteria, which the ALJ accurately described as requiring:

---

supported by substantial evidence because the VE testimony was incomplete. (Doc. 11 at 45-47). Plaintiff's brief fails to articulate a rationale for imposing a 20% off-task limitation into his RFC. Accordingly, further discussion of this undeveloped argument is not warranted. To the extent Plaintiff may rely on Dr. Wilson's opinions to establish these additional limitations, the ALJ properly discounted those opinions. Furthermore, as explained below, substantial evidence supports the ALJ's conclusion that Plaintiff had adequate attention span and concentration to complete a workday.

> at least one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately, or effectively, an on a sustained basis.

(R. 22); *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.[3] The ALJ found Plaintiff had moderate limitations as to each of the paragraph B domains. (R. 22).

The ALJ also found Plaintiff did not satisfy the paragraph C criteria for listings 12.03 or 12.04.[4] For each of these listings, paragraph C criteria require a claimant to show "marginal adjustment," meaning "minimal capacity to adapt to changes in [the] environment or to demands that are not already part of [the claimant's] daily life." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ found the record did not support the conclusion that Plaintiff's adjustment was marginal. (R. 22-23). The ALJ also noted that no state agent psychological consultant concluded Plaintiff met a listing. (R. 23).

Plaintiff bears the burden of showing he meets a listed impairment. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986). To do so, Plaintiff must have a diagnosis included in the listings and point to medical reports documenting he met

---

[3] While the ALJ did not explicitly address whether Plaintiff met listing 12.06, it shares the same paragraph B criteria of the listings he did discuss. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

[4] The paragraph C criteria for listing 12.06 is identical; there is no paragraph C criteria for listing 12.08. 20 C.F.R. Part 404 Subpart. P, App'x 1.

13

all the specific criteria of a listing. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); 20 C.F.R. §§404.1525, 416.925. A diagnosis alone is inadequate to satisfy the criteria. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).

Deficiencies in Plaintiff's briefing aside, substantial evidence supports the ALJ's determination that Plaintiff did not satisfy the paragraph B or C criteria of a listed impairment. (R. 365-94, 433-64 (generally showing Plaintiff was able to remember and relate his prior work history and respond appropriately to questions posed by medical providers); *see* R. 196, 371, 375, 377, 434, 444 (showing Plaintiff spent time with family and friends, lived with others, and had good rapport with medical providers and non-medical staff at CED); R. 37, 378, 434, 453, 462 (consistently, but not uniformly,[5] showing plaintiff had adequate concentration and attention); R. 393 (showing Plaintiff could complete activities of daily living)).

For the foregoing reasons, substantial evidence supports the ALJ's conclusion that Plaintiff did not satisfy the criteria of a listed impairment.

## IV. CONCLUSION

Upon review of the administrative record and considering all of Plaintiff's arguments, the undersigned finds the Commissioner's decision is supported by

---

[5] On only one occasion—in March 2015—was Plaintiff's concentration and attention assessed as inadequate. (R. 379). Additionally, on October 21, 2016, Plaintiff's concentration was noted to be diminished, but his attention span was fair. (R. 444).

substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed. A separate order will be entered.

**DONE** this 11th day of October, 2019.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE